IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

File No.: 06664.05

| | |
|---|---|
| CENTRAL LEASING CO. OF NJ., LLC<br><br>vs.<br><br>CHAPEL STEEL CORP.,<br><br>and<br><br>WILLIAM CONDOSTA<br>a/k/a WILLIAM R. CONDOSTA<br><br>and<br><br>PRIME PLATE ENTERPRISES, INC.<br>t/a PRIME PLATE INDUSTRIES, INC. | No.: 08-2569<br><br>CIVIL ACTION |

### FIRST AMENDED COMPLAINT

### THE PARTIES

1. Plaintiff, Central Leasing Co. of NJ, LLC (hereinafter "Plaintiff" or "Central"), is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 32 Central Ave., Midland Park, NJ 07432. Plaintiff is authorized to do business in the Commonwealth of Pennsylvania. The only members of Central as of the date of the filing of the original Complaint on June 2, 2008 were John J. Gerard who is a resident of and citizen of the State of New Jersey, and Elyse R. Gerard who is a resident of and citizen of the State of West Virginia.

2. Defendant, Chapel Steel Corp. (hereinafter "Chapel"), is believed and therefore averred to be a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered office c/o CT Corporation System, 1515 Market Street, Suite 1210, Philadelphia, PA 19102.

3. Defendant, William Condosta a/k/a William R. Condosta (hereinafter "Condosta") is believed and therefore averred to be an individual domiciliary of the Commonwealth of Pennsylvania with a residence address at 2023 Carol Avenue, Bethlehem, PA 18018.

4. Defendant, Prime Plate Enterprises, Inc. t/a Prime Plate Industries, Inc. (hereinafter "Prime Plate"), is believed and therefore averred to be a defunct Pennsylvania corporation, with a registered business address at 2001 Langley Avenue, Philadelphia, PA 19112.

5. Upon information and belief, at all times herein concerned herein, Defendant, Condosta, was

Vice President of Defendant, Prime Plate, and was fully authorized and empowered to act on behalf of Prime Plate pertaining to the subject matter of the instant Complaint.

## JURISDICTION AND VENUE

6. Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C.A. §1332(a)(1) in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7. Venue is based upon 28 U.S.C.A. §1391(a)(2) in that the events giving rise to Plaintiff's claim occurred in the Eastern District of Pennsylvania.

## THE SECURITY AGREEMENT AND ASSIGNMENTS THEREOF

8. Central is a secured creditor of Prime Plate by virtue of the following:

9. On or about December 17, 1999, Prime Plate entered into a security agreement (hereinafter the "Security Agreement") with Crossbridge Capital Partners, LLC (hereinafter "Crossbridge") whereby Prime Plate granted a continuing security interest in and lien upon the property and interests of Prime Plate as more fully set forth in paragraph 2 of the Security Agreement. A true and correct copy of the Security Agreement is attached hereto and incorporated herein by reference as Exhibit "1".

10. On or about December 3, 2003, Crossbridge assigned its interest in and to the Security Agreement to the CIT Group/Business Credit, Inc. (hereinafter "CIT") by virtue of an Assignment, Assumption and Release Agreement and a Bill of Sale and Assignment (hereinafter collectively referred to as the "Crossbridge Assignment"). A true and correct copy of the December 3, 2003 Crossbridge Assignment is attached hereto and incorporated herein by reference as Exhibit "2".

11. On or about March 10, 2005, CIT assigned its interest in and to the Security Agreement to Central by virtue of a certain Loan Assignment Agreement (the "CIT Assignment"). A true and correct copy of the CIT Assignment is attached hereto and incorporated herein by reference as Exhibit "3".

## THE FINANCING STATEMENT, ASSIGNMENTS, AND CONTINUATIONS THEREOF

12. A UCC-1 Form Financing Statement was timely filed with the Pennsylvania Department of State on October 8, 1999 recorded as filing number 30810831. A true and correct copy of Crossbridge's UCC-1 Form Financing Statement is attached hereto and incorporated herein by reference as Exhibit "4".

13. On or about December 11, 2003, a UCC-1 Form Financing Statement Amendment assigning the

interest of Crossbridge to CIT was filed at number 20031201518. A true and correct copy of the UCC-1 Form Financing Statement Amendment is attached hereto and incorporated herein by reference as Exhibit "5".

14. On or about August 31, 2004, a UCC-1 Form Financing Statement Amendment number continuing the filing of number 30810831 was filed making effective CIT's security interest through October 8, 2009. A true and correct copy of the UCC-1 Form Financing Statement Amendment is attached hereto and incorporated herein by reference as Exhibit "6".

15. On or about April 1, 2005, a UCC-1 Form Financing Statement Amendment assigning the interest of CIT in Financing Statement number 30810831 to Central was filed at number 2005040603503. A true and correct copy of the UCC-1 Form Financing Statement Amendment is attached hereto and incorporated herein by reference as Exhibit "7".

16. In addition, a Second UCC-1 Form Financing Statement was timely filed with the Pennsylvania Department of State on October 8, 1999 thereby further perfecting Crossbridge's security interest at number 30810834. A true and correct copy of the UCC-1 Form Financing Statement is attached hereto and incorporated herein by reference as Exhibit "8".

17. Filing number 30810834 was assigned by Crossbridge to CIT on December 11, 2003, continued on August 31, 2004, and assigned to Central on April 1, 2005 as indicated in the "filing chain for a debtor" retrieved from the Pennsylvania Department of State website, a true and correct copy of which is attached by reference as Exhibit "9".

### THE SALE AND CONVERSION OF CENTRAL'S COLLATERAL

18. On or about February 2, 2007, Prime Plate, by and through Condosta, executed a Bill of Sale as part of an Equipment Sales Agreement to sell one (1) Mi-Jack Gantry Crane, Model 650C, Serial No. 1250 (hereinafter the "Crane"). A true and correct copy of the Equipment Sales Agreement is attached hereto and incorporated herein by reference as Exhibit "10". The Bill of Sale is attached as Exhibit "D" to Exhibit "10".

19. The purchase price paid by Chapel for the Crane as enumerated in the Equipment Sales Agreement was $285,000.00.

20. In accordance with the wiring instructions attached as Exhibit "E" to the Equipment Sales Agreement, $195,266.22 was to wired to Mi-Jack Products, Inc. ("Mi-Jack") via the Schwabenland & Ryan escrow account, and the sum of $89,733.78 was to be wired to Prime Plate via the Iolta/Mark S. Haltzman &

Associates attorney escrow account.

21. Upon information and belief, the foregoing wire transfers were completed on or about February 2, 2007.

22. Upon information and belief, the $285,000.00 purchase price of the crane represented the fair market value thereof at the time that the Equipment Sales Agreement was consummated.

23. Further, at the time, title to the crane passed from Mi-Jack to Prime Plate pursuant to the Bill of Sale dated February 2, 2007 attached as Exhibit "C" to the Equipment Sales Agreement, the Crane became the property of Prime Plate to which Central's security interest attached.

24. When title to the crane passed from Prime Plate to Chapel, Central's security interest continued in the Crane (collateral) in the hands of Chapel <u>and to the proceeds of the sale of the crane in the hands of Prime Plate</u>.

25. Prime Plate, by and through its counsel, Mark S. Haltzman, Esquire (hereinafter "Haltzman"), was notified[1] by letter from Joshua B. Ladov, Esquire (hereinafter "Ladov") that the sum of $89,733.78 was the rightful collateral of Central and that anyone who came into possession of the proceeds was liable to Central for the tort of conversion; and that any officers of Prime Plate who personally participated in the sale of the crane would be held personally liable to Central for conversion as well; and finally directing Haltzman to immediately turn over the proceeds to Ladov on behalf of Central and/or recover same from whomever received the proceeds and to immediately turn them over to Ladov. A true and correct copy of Ladov's February 14, 2007 letter is attached hereto and incorporated herein by reference as Exhibit "11".

26. The aforesaid letter was delivered to Haltzman via facsimile on February 14, 2007, and served via certified mail on February 15, 2007, and the regular mail was not returned to Ladov. True and correct copies of the fax transmittal cover sheet, confirmation page, and certified mail return receipt are attached hereto and incorporated herein by reference collectively as Exhibit "12."

27. At the time of CIT's Assignment of the Crossbridge debt to Central, the loan balance was $1,811,694.67, and no payment thereon has been made to Central since the date of the CIT Assignment.

<u>COUNT I - CONVERSION</u>

<u>PLAINTIFF VS. DEFENDANTS, CHAPEL AND PRIME PLATE</u>

---

[1] Haltzman was a carbon copy recipient of Ladov's February 14, 2007 letter.

28. Plaintiff incorporates the foregoing paragraphs as if fully set forth at length herein.

29. Upon information and belief, Chapel moved the crane from the Philadelphia Naval Ship Yard to its facility at the Pottstown Industrial Complex, Building 2E, 191 South Keim Street, Pottstown, Pennsylvania.

30. Chapel has deprived Central of Central's right of property in, or use or possession of, or otherwise interfered with the crane without Central's consent and without lawful justification.

31. Central had immediate right to possession of the crane at the time it was converted by Chapel.

32. "Where a debtor sells collateral subject to a perfected security agreement, the secured party may proceed . . . against the purchaser (a) by repossession of the purchased goods in person or by action in replevin, or (b) *by an action in trespass for conversion of the collateral*." First Pennsylvania Banking and Trust Company v. Liberati, 282 Pa. Super.198, 206, 422 A.2d 1074, 1077-78, 30 UCC Rep. Serv. 1469, ___ (1980) (citations omitted).

33. The measure of damages for conversion is market value of the converted property at the time and place of conversion. In this case, $285,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant, Chapel Steel Corp., in the amount of $285,000.00 together with costs, continuing interest at Pennsylvania's statutory prejudgment interest rate of 6% per annum, together with such other and further relief as this Honorable Court deems just and equitable.

## COUNT II - CONVERSION
## PLAINTIFF VS. DEFENDANT, CHAPEL

34. Plaintiff incorporates the foregoing paragraphs as if fully set forth at length herein.

35. On April 24, 2008, Plaintiff, by and through its Counsel, Ladov, made demand upon Chapel's Counsel, William J. Clements, Esquire (hereinafter "Clements"), of the Law Firm of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP for the return of the Crane to Central at its offices at 32 Central Avenue, Midland Park, NJ 07432 within ten days from the date of the April 24th letter; or alternatively for Clements to contact Ladov within said ten day period to make arrangements for the removal of the Crane from Chapel's premises. True and correct copies of the April 24, 2008 Letter from Ladov to Clements, fax transmittal cover sheet, and confirmation page are attached hereto and incorporated herein by reference collectively as Exhibit "13."

36. Chapel neither returned the Crane nor made arrangements for the removal of the Crane from Chapel's premises as demanded by Plaintiff.

37. Chapel has deprived Central of Central's right of property in, or use or possession of, or otherwise interfered with the crane without Central's consent and without lawful justification.

38. Central had immediate right to possession of the crane at the time it was converted by Chapel.

39. The measure of damages for conversion is market value of the converted property at the time and place of conversion. In this case, $285,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant, Chapel Steel Corp., in the amount of $285,000.00 together with costs, continuing interest at Pennsylvania's statutory prejudgment interest rate of 6% per annum, together with such other and further relief as this Honorable Court deems just and equitable.

## COUNT III - CONVERSION

## PLAINTIFF VS. DEFENDANT, PRIME PLATE

40. Plaintiff incorporates the foregoing paragraphs as if fully set forth at length herein.

41. "Where a debtor sells collateral subject to a perfected security agreement, the secured party may proceed (1) against the debtor (a) to collect the debt on the original instrument or (b) to assert his rights under the security agreement against any identifiable proceeds in the hands of the debtor . . . ." Id.

42. There were identifiable proceeds in the hands of Prime Plate, by and through its counsel, Haltzman, Esquire in the sum of $89,733.78 which was wired into the Iolta account of attorney Haltzman.

43. In failing to turnover the $89,733.78 proceeds to Central's counsel, Prime Plate deprived Central of its right of property in, or use or possession of, or otherwise interfered with the aforesaid proceeds without Central's consent and without lawful justification.

44. Central has suffered damages by virtue of Prime Plate's conversion in the sum of $89,733.78.

WHEREFORE, Plaintiff demands judgment against Defendant, Prime Plate Enterprises, Inc. a/k/a Prime Plate Industries, Inc., in the amount of $89,733.78 together with costs, continuing interest at Pennsylvania's statutory prejudgment interest rate of 6% per annum, together with such other and further relief as this Honorable Court deems just and equitable.

## COUNT IV - CONVERSION

## PLAINTIFF VS. DEFENDANT, WILLIAM CONDOSTA A/K/A WILLIAM R. CONDOSTA

45. Plaintiff incorporates the foregoing paragraphs as if fully set forth at length herein.

46. Upon information and belief, Condosta negotiated the purchase option for the buyout of the lease

of the Crane with Mi-Jack and/or participated in the sale of the Crane from Prime Plate to Chapel and/or participated in and/or directed the wire transfers to and through the account of Mark S. Haltzman & Associates and/or directed the disposition thereof. Further, Condosta specifically directed the aforesaid acts to be done, or participated or cooperated therein.

47. Condosta's direction, participation and/or cooperation in the aforesaid acts worked a deprivation of Central's right of property in, or use or possession of, or interfered with Central's right in and to the $89,733.78 in proceeds which was deposited into the account of Mark S. Haltzman & Associates on behalf of Prime Plate, all without Central's consent and without lawful justification.

48. Accordingly, Condosta, as Vice President of Prime Plate, took part in the commission of the tort of conversion and is personally liable, jointly and severally, with Prime Plate.

49. Central has suffered damages in the sum of $89,733.78.

WHEREFORE, Plaintiff demands judgment against Defendant, William Condosta a/k/a William R. Condosta, in the amount of $89,733.78 together with costs, continuing interest at Pennsylvania's statutory prejudgment interest rate of 6% per annum, together with such other and further relief as this Honorable Court deems just and equitable.

## COUNT V - REPLEVIN
### PLAINTIFF VS. DEFENDANT, CHAPEL

50. Plaintiff incorporates the foregoing paragraphs as if fully set forth at length herein.

51. Prior to February 2, 2007 and as a result of the sale of the Crane, Prime Plate was in default of the Security Agreement.

52. The occurrence of an event of default under the Security Agreement gave Central a right to immediate possession of the Crane.

53. A security interest, when coupled with a right of immediate possession, satisfies the requirements for maintaining an action in replevin. Brandywine Lanes, Inc. V. Pittsburgh National Bank, 220 Pa. Super. 363, 369, 284 A. 2d 802, 806, 9 UCC Rep. Serv. 1285, ___ (1972).

54. A plaintiff in a replevin action need not set up title good against the whole world, but must show good title as against the defendant in possession. Id.

55. Central has good title as against Chapel.

56. Central has a right to immediate possession of the Crane.

57. Upon information and belief, the value of the Crane to be replevied equals purchase price paid agreed by Chapel to be paid for the Crane as enumerated in the Equipment Sales Agreement, i.e., $285,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant, Chapel Steel Corp., as follows:

    a. Determining Plaintiff's right to immediate recovery and possession of the Crane;

    b. The money value of the Crane based upon the value as set forth in this complaint, i.e., $285,000.00 plus interest, attorney's fees and repossession costs;

    c. Plaintiff's right for compensatory damages for the unjust retention of said property by Defendant, and the consequential and special damages flowing therefrom to Plaintiff;

    d. Lost revenue and/or rental income;

    e. Reasonable expenses associated with the return of the Crane to Plaintiff;

    f. For the costs of this action; and

    g. For such other and further relief as this Honorable Court deems just and equitable.

/s/ Joshua B. Ladov
By: Joshua B. Ladov, Esquire
Lipsky & Brandt
Aramark Tower, Suite 2820
1101 Market Street
Philadelphia, Pa 19107-2993
Office: (215) 922-6644
Fax: (215) 440-7185
jladov@lipskybrandt.com
Attorney for Plaintiff,
Central Leasing Co. of NJ, LLC