IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CENTRAL LEASING CO. OF N.J., LLC | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : NO. 08-CV-2569 (TJS) |
| CHAPEL STEEL CORP., et al. | : |
| Defendants. | : |

## ORDER

AND NOW, this _____ day of _____, 2008, upon consideration of Defendant Chapel Steel Corp.'s Motion to Dismiss, and any opposition thereto, it is hereby ORDERED that the Motion is GRANTED.

BY THE COURT

_____ J.

PHIL1 795496-1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CENTRAL LEASING CO. OF N.J., LLC : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | NO. 08-CV-2569 (TJS) |
| : | |
| CHAPEL STEEL CORP., et al. : | |
| : | |
| Defendants. : | |

### DEFENDANT CHAPEL STEEL CORP.'S
### MOTION TO DISMISS PLAINTIFF'S CLAIMS

Defendant Chapel Steel Corp. ("Chapel Steel") hereby moves the Court for an order dismissing Chapel Steel from this action because the complaint fails to state a claim against Chapel Steel upon which relief can be granted. The grounds for this motion are more fully set forth in the accompanying memorandum of law, which is incorporated by reference in this motion. Pursuant to the Court's Motion Policies and Procedures, oral argument is requested.

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP

By: /s/ Lisa A. Lori
Michael K. Coran
Anthony P. Tabasso
Lisa A. Lori
260 South Broad Street
Philadelphia, PA 19102
(215) 568-6060

Dated: July 15, 2008

*Attorneys for Defendant,
Chapel Steel Corp.*

PHIL1 795497-1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CENTRAL LEASING CO. OF N.J., LLC : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | NO. 08-CV-2569 (TJS) |
| : | |
| CHAPEL STEEL CORP., et al. : | |
| : | |
| Defendants. : | |

**DEFENDANT CHAPEL STEEL CORP.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLAIMS**

Defendant Chapel Steel Corp. ("Chapel Steel") submits this memorandum of law in support of its motion to dismiss plaintiff Central Leasing Co. of N.J., LLC's ("Central Leasing") claims against it.

**I.     INTRODUCTION**

Central Leasing attempts to extort $285,000.00 from defendant Chapel Steel by wrongfully threatening to repossess a crane that Chapel Steel purchased from a third party. Central Leasing has no claims against Chapel Steel, and it has no right to possession of the crane. The only damage claim Central Leasing can possibly assert in this action is against defendants Prime Plate and its officer, William Condosta (collectively, the "Prime Plate Defendants"), for the amount of money they received in connection with the transaction at issue, $89,733.78.

If credited, Central Leasing's claims against Chapel Steel would work an inequitable forfeiture based on nothing more than an alleged "gotcha" security interest. Further, as set forth more fully below, Central Leasing does not stop at attempting to get something for nothing at Chapel Steel's expense. It actually seeks to get much more from Chapel Steel than it could ever be entitled to from any of the defendants.

PHIL1 795491-1

Central Leasing's claims against Chapel Steel for "conversion" and "replevin" of the crane fail because even if Central Leasing had some ownership or possessory right in the crane superior to Chapel Steel's—which it never had in the first place—Central Leasing allowed Chapel Steel to take possession of the crane, destroying any such claims. As evidenced by the documents attached to Central Leasing's first amended complaint, Central Leasing's demand for possession came over a year after it allowed Chapel Steel to take possession of the crane in February of 2007. Thus, Central Leasing's April 2008 *nunc pro tunc* demand for possession was concocted for the purpose of this litigation only, to threaten Chapel Steel with the unfounded specter of repossession so that Chapel Steel would capitulate to Central Leasing's unreasonable and inequitable demands.

At most, then, this case is about money damages. These money damages are recoverable only from the actual wrongdoers, the Prime Plate Defendants, who Central Leasing is likewise suing for conversion. Notably, Central Leasing is suing the Prime Plate Defendants for the exact amount of money—$89,733.78—that the Prime Plate Defendants obtained from Chapel Steel in the transaction.[1] As more fully discussed below, this proves Chapel Steel's point, namely, that by seeking either repossession of the entire crane (allegedly valued at $285,000.00) or that amount in cash, Central Leasing is inequitably and with neither legal nor factual basis seeking to recover a windfall of $195,266.22 at Chapel Steel's expense.

Accordingly, Central Leasing's claims against Chapel Steel should be dismissed.

---

[1] See 1st Am. Compl. at Counts III and IV.

2

PHIL1 795491-1

## II.  BACKGROUND

This lawsuit arises out of a three-party transaction for the purchase and sale of a Mi-Jack Gantry Crane (the "Crane") that was consummated between Mi-Jack Products, Inc. ("Mi-Jack"), Prime Plate and Chapel Steel on or about February 2, 2007, as follows:

- Mi-Jack was the owner of the Crane. See 1st Am. Compl., Ex. 10.

- Mi-Jack had previously leased the Crane to Prime Plate. Id.

- The lease contained an option for Prime Plate to purchase the Crane (the "Prime Plate Option"). Id.

- The value of the Prime Plate Option, and whether the Prime Plate Option even existed at the time of the transaction, was in dispute between Prime Plate and Mi-Jack (Mi-Jack argued that Prime Plate was in default under the lease, and Prime Plate argued that it still had the right to purchase the Crane).

- Regardless, Prime Plate had no money to exercise the Prime Plate Option, as it was not in business at the time.

- As a result of the three-party transaction, Chapel Steel purchased the Crane for $285,000.00 by simultaneously (and separately) wiring to Mi-Jack the sum of $195,266.22, and to Prime Plate the sum of $89,733.78. Id. See also 1st Am. Compl. at ¶ 20.

- The $89,733.78 received by Prime Plate represented the value that Mi-Jack and Prime Plate put on the disputed Prime Plate Option, the only arguable interest Prime Plate ever had in the Crane that was owned by and leased to it by Mi-Jack. See 1st Am. Compl., Ex. 10.

- The transaction at issue was structured by the three parties to reach, as simply as possible, and in as few wire transfers as possible, the end result contemplated by each: (i) payment to the owner, Mi-Jack, for the Crane; (ii) payment from Mi-Jack to Prime Plate with respect to the Prime Plate Option; and (iii) Chapel Steel becoming the ultimate owner of the Crane. Id.

Central Leasing alleges that it is a secured creditor of Prime Plate and that, purportedly, during the course of the above transaction, a security interest in its favor attached to the Crane and/or the entire $285,000.00 purchase price paid for the Crane. Central Leasing now brings an action, over a year after the transaction was consummated, seeking the Crane for which Chapel

3

Steel paid $285,000.00. Central Leasing alternatively seeks the entire $285,000.00 paid by Chapel Steel for the Crane. Again—and as Central Leasing has always been aware—the bulk of this money, $195,266.22, went directly to Mi-Jack, the undisputed owner of the Crane at the time of the transaction. At best for Central Leasing, the only amount possibly at issue here is the $89,733.78 received by the Prime Plate Defendants in exchange for relinquishing their claimed option to purchase the Crane from Mi-Jack.[2]

Central Leasing itself recognized this throughout its dealings with Chapel Steel after the transaction. On February 14, 2007, after being informed of the particulars of the transaction, Central Leasing consented to Chapel Steel taking possession of the Crane and removing it to Chapel Steel's business premises, where it has been used for over a year without protest or demand from Central Leasing. See 1st Am. Compl., Ex. 11.

Up until the point of this lawsuit, it has been consistently represented by Central Leasing that any claim it had was based on the $89,733.38, not for recovery of the Crane itself, and certainly not for the recovery of the entire purchase price paid by Chapel Steel for the Crane. Compare 1st Am. Compl., Ex. 13 with Ex. A hereto.[3] Indeed, Chapel Steel reasonably relied upon this in its expensive undertaking, after receiving the February 14, 2007 letter, to break down the Crane (an exceedingly large piece of equipment), transport it by truck from the place of purchase to Chapel Steel's business premises, reassemble the Crane, and return it to operating condition.

---

[2] Chapel Steel denies liability for this amount, as it is in the hands of the Prime Plate Defendants, who are the ultimate wrongdoers in this action. Again, this litigation stands as Central Leasing's improper attempt to shift the burden of another party's wrongful conduct onto Chapel Steel and thereby recover from Chapel Steel much more than Central Leasing could possibly be entitled to under the facts and the law.

[3] Exhibit A hereto was sent in response to the April 24, 2008 letter from Central Leasing's counsel attached to the complaint as Exhibit 11. It is not Chapel Steel's intention to convert this into a motion for summary judgment. However, as discussed in the "Standard of Review" section, infra, it is Chapel Steel's position that this letter is properly considered, because Central Leasing has disingenuously failed to inform the Court of the entire background of the parties' dealings.

Central Leasing's newly minted and pretextual conversion and replevin claims are brought in bad faith to extort more money out of Chapel Steel than Central Leasing could ever have hoped to net even had it attempted to take possession of the Crane (which it did not at any time relevant to its past dealings with the Prime Plate Defendants or this instant dispute). At most, the facts of record demonstrate that Central Leasing may have a claim against the Prime Plate Defendants for the $89,733.38 they took possession of in connection with the transaction, but no claims against Chapel Steel.

### III.  ARGUMENT

Chapel Steel's motion to dismiss Central Leasing's claims for conversion and replevin in Counts I, II and III of the first amended complaint should be granted.

#### A.  Standard Of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the plaintiff's claims. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). "Courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint and legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." Cherry v. Biomedical Applications of Pa., Inc., 397 F. Supp.2d 609, 611-12 (E.D. Pa. 2005). Therefore, among other things, a court may look beyond the complaint to extrinsic documents when the plaintiff's claims are based on those documents. Id. at 612. Here, this includes Chapel Steel's response to the April 24, 2008 letter forming Central Leasing's late-made demand for tender of Crane, which may be considered without converting the motion to dismiss into one for summary judgment, and which is attached hereto as Exhibit A. Buck v. Hampton Twp. S.D., 452 F.3d 256, 260 (3d Cir. 2006); Angstadt v. Midd-West S.D., 377 F.3d 338, 342 (3d Cir. 2004); Rossman v. Fleet Bk. (R.I.) Nat'l Ass'n, 280 F.3d 384, 388 n.4 (3d Cir. 2002).

5

### B.   The Count I And II Conversion Claims Against Chapel Steel Fail

As set forth in Exs. 11 and 13 to the first amended complaint, and Exhibit A hereto, Central Leasing: (i) allowed Chapel Steel to take the Crane; (ii) remained silent for over a year; (iii) recently resurfaced in an attempt to recover from Chapel Steel the $89,733.78 on account of the Prime Plate Option that Central Leasing claimed a security interest in; and (iv) when this demand was not met, extortionately demanded return of the Crane or the entire $285,000.00 purchase price Chapel Steel paid for the Crane (again, the bulk of which, $195,266.22, went to the owner of the Crane, Mi-Jack, as Central Leasing has always been well aware of).

Central Leasing's Count I and Count II conversion claims apparently both seek either $285,000.00 or return of the Crane. Central Leasing is entitled to neither.

#### 1.   Central Leasing's Conversion Claims Are Missing Requisite Elements

The elements of conversion are: (i) the deprivation of another's right of property in, or use or possession of, a chattel; (ii) without the owner's consent; and (iii) without lawful justification. McDermott v. Party City Corp., 11 F. Supp.2d 612, 626 n.18 (E.D. Pa. 1998). See also Pioneer Commercial Fd. v. American Fin'l Mortg. Corp., 855 A.2d 818, 824 n.12 (Pa. 2004) ("among the essential elements of conversion is an absence of owner's consent"). An intent to exercise control over the property that is inconsistent with plaintiff's alleged rights is required. Chrysler Credit Corp. v. J.J.M., Jr., Inc., 834 F. Supp. 813, 844 (E.D. Pa. 1993); Teamsters, Chauffers, Warehouseman & Helpers, Local 764 v. Greenawalt, 880 F. Supp. 1076, 1082 (M.D. Pa. 1995).

6

A plaintiff may bring a conversion claim only if it had actual or constructive possession of the property, or an immediate right to possession of the property, at the exact time of the conversion. Chrysler Credit Corp., 834 F. Supp. at 844. See also Marshall v. Fenstermacher, 388 F. Supp.2d 536, 554 (E.D. Pa. 2005) (dismissing conversion claim because plaintiff failed to plead or demonstrate that it had an immediate right to possession of the property at issue at the time of the alleged conversion); Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., Ltd., 974 F. Supp. 822, 845 (E.D. Pa. 1997) (Pennsylvania law disallows conversion claims where an immediate right to possession is lacking).

Finally, in an action for conversion, the damages are to be measured as to the value of the property allegedly converted at the time of the alleged conversion. Babich & Stotler, Inc. v. John Deere Industrial Equip. Co., 339 F. Supp. 1381, 1383 (W.D. Pa. 1972), aff'd, 474 F.2d 1340 (3d Cir. 1973). Here, at best (and for the sake of argument only), this could only be the Prime Plate Option, not the Crane itself and certainly not the entire purchase price.

Central Leasing's conversion claims with respect to both the Crane and the entire $285,000.00 purchase price for the Crane fail on any of the following independent grounds:

- ***In its February 14, 2007 letter, Central Leasing consented to Chapel Steel taking the Crane.*** If Central Leasing's intent was to exercise dominion and control over the property, the time to do so was then, not now, over a year later. Central Leasing cannot manufacture a conversion claim with its disingenuous and pretextual *nunc pro tunc* April 24, 2008 "demand" for possession of the Crane. Compare 1st Am. Compl. at Exs. 11 and 13 with Exhibit A hereto. Indeed, Central Leasing only sent the April 24, 2008 letter after Chapel Steel pointed this issue out to it. As a result of the February 14, 2008 letter, the conversion claims fails *ab initio*.

7

- *__Chapel Steel did not act with any intent inconsistent with Central Leasing's claimed rights.__* Central Leasing allowed Chapel Steel to take the Crane and—until instituting this litigation—has always sought recovery only of the $89,733.78 based on the Prime Plate Option, the amount ultimately received by the Prime Plate Defendants in connection with the transaction.

- *__Central Leasing cannot plead that it had actual or constructive possession of the Crane at the time of the transaction, or of the entire $285,000.00 purchase price that it alleges was "converted."__* At most, Prime Plate had an option to purchase the Crane and, at most, Central Leasing could have some claim to that option, which was valued at a fraction of the value of the Crane.

- *__Nor can Central Leasing plead that it had an immediate right to possession of the Crane, or the $285,000.00 purchase price.__* Indeed, Central Leasing cannot even claim that it had an immediate right to take possession of the Crane pursuant to the Prime Plate Option, because the Prime Plate Option could not be exercised without paying $195,266.22 to Mi-Jack, the owner of the Crane (this sum representing the difference between the value of the Crane and the value of the Prime Plate Option, and the amount Mi-Jack must receive in any transaction respecting the Crane).

Astoundingly, Central Leasing now seeks the full $285,000.00 benefit of Prime Plate's supposed rights in the Crane without taking into account that Prime Plate was a mere lessee and, consequently, the value of any interest Prime Plate may have had in the Crane to which any security interest could attach was much, much less. For any and all of the foregoing reasons, Central Leasing's conversion claims fail.

### 2. Central Leasing's Conversion Claims Fail Because Its Alleged Security Interest Could Not Have Attached In This Transaction

One additional matter must be noted that warrants dismissal separate and apart from the above. In paragraphs 23 and 24 of its first amended complaint, Central Leasing describes how its alleged "gotcha" security interest purportedly attached to the Crane and/or the purchase price in the transaction. Central Leasing's presumption is erroneously based on an artificial splitting

8

PHIL1 795491-1

of the transaction into multiple parts. Pennsylvania law does not allow such glorification of form over substance.

***Prime Plate never owned the Crane.*** Mi-Jack was the owner of the Crane at all times relevant to the transaction. Central Leasing claims no security interest with respect to Mi-Jack or any of its equipment because it has none. Quite simply, no Central Leasing security interest ever attached to the Crane. Again, in paragraphs 23 and 24 of its first amended complaint, Central Leasing attempts to "split the atom" of this transaction into various parts, although all acts occurred simultaneously, to manufacture an instantaneous Prime Plate "ownership interest" in the Crane and/or the entire purchase price to which Central Leasing's alleged "gotcha" security interest supposedly attached.

Where—as here—multiple writings are executed in connection with the same transaction, they should be construed as a whole. McCarl's, Inc. v. Beaver Falls Municipal Auth., 847 A.2d 180, 184 (Pa. Commw. Ct. 2004); Huegel v. Mifflin Const. Co., Inc., 796 A.2d 350, 354-55 (Pa. Super. Ct. 2002); Kroblin Refrig. Xpress, Inc. v. Pitterich, 805 F.2d 96, 108 (3d Cir. 1986); CGU Life Ins. Co. v. Metro. Mortg. & Secs. Co., Inc., 131 F. Supp.2d 670, 675 (E.D. Pa. 2001); LCI Comm's Inc. v. Wilson, 700 F. Supp. 1390, 1395 (W.D. Pa. 1988). Likewise, when writings pertain to the same transaction, it does not matter that the parties to each writing are not the same: the writings still must be construed as a whole. Id.

Here, on or about February 2, 2007, Mi-Jack, Prime Plate and Chapel Steel executed the following writings in connection with the sale of the Crane, which must be interpreted together as forming a single simultaneous transaction:

- The Equipment Sales Agreement.
- The Bill of Sale from Mi-Jack.

- The Bill of Sale from Prime Plate.

See 1st Am. Compl., Ex 10. As further evidence that this was a single simultaneous transaction: (i) the Mi-Jack Bill of Sale was "incorporated by reference and expressly made part of" the Equipment Sales Agreement, see 1st Am. Compl., Ex. 10 at ¶ 3; and (ii) the transaction would not be completed until simultaneous separate wires were made from Chapel Steel to Mi-Jack (in the amounts of $195,266.22) and from Chapel Steel to Prime Plate (in the amount of $89,733.78), see 1st Am. Compl., Ex. 10 at ¶ 4 and Ex. E thereto.

What this means is that this was a single, integrated transaction in which Chapel Steel purchased the crane from Mi-Jack, the owner of the Crane. Central Leasing had no interest in the Crane while it was in Mi-Jack's hands and, consequently, no interest could attach to the Crane in Chapel Steel's hands. Neither did Central Leasing have any interest in the entire $285,000.00 purchase price. The only interest Central Leasing could possibly claim in any property involved in the transaction is against the $89,733.78 when it passed into the hands of the Prime Plate Defendants. But there is no claim against Chapel Steel, the Crane or the entire purchase price. For this reason as well, the conversion claims against Chapel Steel fail: there was no Central Leasing interest or property that Chapel Steel could have "converted."

Central Leasing was, of course, aware of these infirmities with its conversion claims, which is why it sat on its hands for over year after letting Chapel Steel take possession of the Crane (and concomitantly, giving up any claim to a right of possession). Central Leasing's only remedy now lies against the Prime Plate Defendants, who are in possession of the $89,733.78—the value of the alleged Prime Plate Option. Central Leasing's conversion claims against Chapel Steel seeking the Crane or the entire $285,000.00 purchase price of the Crane should be dismissed.

10

### C. The Count V Replevin Claim Against Chapel Steel Fails

There is no right to replevin unless the plaintiff has an immediate right to possession of the property. Mellon Nat'l Bank & Trust Co. v. Wagner, 182 A.2d 284, 287 (Pa. 1962). Further, equitable principles are applicable to a legal action in replevin. Gemini Equipment Co. v. Pennsy Supply, Inc., 595 A.2d 1211, 1214 (Pa. Super. Ct. 1991). As discussed above, Central Leasing has not pleaded, and cannot demonstrate, an immediate right to possession of the Crane. Central Leasing's replevin claim fails for much the same reason that its conversion claims fail.

The replevin claim additionally fails on the equities. Central Leasing made no attempt to take possession or force a sale of the Crane, or otherwise execute on its supposed security interest in the Crane, prior to the transaction. Further, from the date it found out about the purchase in early 2007 through just prior to filing this lawsuit, Central Leasing likewise made no effort to take possession of the Crane. It instead allowed the Crane to remain at Prime Plate, cast its net, and allowed Chapel Steel to do its dirty work for it.[4] Then, on February 14, 2007, after the transaction, Central Leasing allowed Chapel Steel to take possession of the Crane, knowing that Chapel Steel would break down the Crane, transport it and restore it to working condition, at great expense. Finally, realizing its difficulty in recovering monies from the Prime Plate Defendants, Central Leasing backtracked and set its sights on Chapel Steel, the entire $285,000.00 purchase price and the Crane itself, based on an alleged "gotcha" security interest.

---

[4] Ironically, Chapel Steel provided close to $90,000.00 that was not otherwise available for Central Leasing to go after the Prime Plate Defendants for. The problem is that Central Leasing now seeks an <u>additional</u> windfall from Chapel Steel.

Such a claim for complete forfeiture is both inequitable and disingenuous under the circumstances. It should also be noted that, to the extent Central Leasing claims that it is a secured creditor, it is bound to act at all times in good faith, which is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." See 13 Pa.C.S. § 902. Central Leasing's conduct towards Chapel Steel has been anything but honest and fair.

On these grounds as well, Central Leasing's replevin claim must fail. Under the circumstances of this transaction, the only claim Central Leasing can arguably make is against the $89,733.78 is cash when it came into possession of the Prime Plate Defendants. Central Leasing has no claim against Chapel Steel for replevin of the Crane.

## IV. CONCLUSION

Chapel Steel's motion to dismiss should be granted.

                                          KLEHR, HARRISON, HARVEY,
                                          BRANZBURG & ELLERS, LLP

Dated: July 15, 2008        By:    /s/ Lisa A. Lori
                                                Michael K. Coran
                                                Anthony P. Tabasso
                                                Lisa A. Lori
                                                260 South Broad Street
                                                Philadelphia, PA 19102
                                                (215) 568-6060

                                                *Attorneys for Defendant,*
                                                *Chapel Steel Corp.*

**EXHIBIT A**

PHIL1 569521-1

# KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP
## ATTORNEYS AT LAW

ANTHONY P. TABASSO
Direct Dial: (215) 569-4397
ATABASSO@klehr.com

260 S. BROAD STREET
PHILADELPHIA, PA 19102

(215) 568-6060
FAX: (215) 568-6603

www.klehr.com

New Jersey Office
457 Haddonfield Road
Suite 510
Cherry Hill, New Jersey 08002-2220
(856) 486-7900

Delaware Office
919 Market Street
Suite 1000
Wilmington, Delaware 19801-3062
(302) 426-1189

April 25, 2008

**VIA FAX - 215-440-7185**

Joshua B. Ladov, Esquire
Lipsky & Brandt
1101 Market Street
Suite 2820
Philadelphia, PA 19107

> RE: **Central Steel Leasing Co. of New Jersey, LLC v. Chapel Steel Corp.**

Dear Mr. Ladov:

As you know, this firm represents Chapel Steel Corp. in the above-referenced matter. I am in receipt of your self-serving April 24, 2008 letter. Frankly, I was disappointed to see the letter in light of our ongoing efforts to resolve this matter. Your client's attempt to demand possession of the Crane at this juncture is transparent bootstrapping designed to bolster the flawed conversion claim set forth in the draft Complaint you recently sent to our office. The letter was, of course, motivated by your recent conversation with my partner, Michael Coran. Mr. Coran pointed out that Central Leasing had no viable claim for conversion in this case because it had granted Chapel Steel explicit permission to remove the Crane from the Aker Philadelphia Shipyard to Chapel Steel's facility in Fort Washington by way of your February 14, 2007 letter. The only reservation contained in that letter was that Central was not waiving its alleged security interest in the Crane. Your client cannot seek to reverse its position fourteen months letter in an attempt to manufacture a conversion claim where none exists. Moreover, Chapel Steel incurred significant expenses dismantling and transporting the Crane, as well as maintaining the Crane over the last fourteen months, in reliance on Central's agreement that Chapel Steel could possess the Crane while your client's alleged claim litigated. Chapel Steel would seek to recoup those expenses in any litigation.

Central's claim, such as it is, rises and falls on the existence of its alleged Article 9 security interest in the Crane. Central cannot seek to change history in a clumsy attempt to manufacture a tort claim and gain settlement leverage. A claim for conversion in the face of the explicit permission granted by your previous correspondence would be frivolous. Although my client prefers to resolve this case, Chapel Steel would strongly consider claims under Rule 11 and Pennsylvania's Dragonetti Act if Central proceeds. As Mr. Coran explained, Chapel Steel

PHIL1 783951-1

KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP

Joshua B. Ladov, Esquire
April 25, 2008
Page 2

remains committed to resolving this matter by pursuing the true bad-actor, Prime Plate. However, your April 24th letter impedes that process. I submit that further legal posturing will not advance either side's cause here.

    Guide your client accordingly.

Yours sincerely,

Anthony P. Tabasso

APT/amf

cc:    Michael K. Coran, Esquire

PHIL1 783951-1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CENTRAL LEASING CO. OF N.J., LLC : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | NO. 08-CV-2569 (TJS) |
| : | |
| CHAPEL STEEL CORP., et al. : | |
| : | |
| Defendants. : | |

### CERTIFICATE OF SERVICE

I, Lisa A. Lori, certify that I served a true and correct copy of the foregoing Motion to Dismiss and supporting Memorandum of Law on behalf of defendant Chapel Steel Corp. upon the parties or their counsel of record by the methods and on the date indicated below:

### Via U.S. First Class Mail

| Joshua B. Ladov, Esquire | William Condosta | Prime Plate Enterprises, Inc. |
| LIPSKY & BRANDT | 2023 CAROL AVENUE | 2001 LANGLEY AVENUE |
| Aramark Tower, Suite 2820 | Bethlehem, PA 18018 | Philadelphia, PA 19112 |
| Philadelphia, PA 19107-2993 | | |
| | | |
| *Attorney for Plaintiff* | *Defendant* | *Defendant* |

This document has been filed electronically and is available for viewing and downloading from the ECF system.

Dated: July 15, 2008

/s/ Lisa A. Lori
Lisa A. Lori